# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**CARRIE JONES**  
5720 McGregor Ave #3R  
Cincinnati, Ohio 45216

Case No:_____

      Plaintiff,

**COMPLAINT WITH JURY DEMAND**

-vs.-

**CONAGRA FOODS, INC.**  
Serve: Conagra Brands, Inc.  
222 Merchandise Mart Plaza, Suite 1300  
Chicago, IL 60654

and

**CONAGRA BRANDS, INC. F/K/A and**  
**Successor in Interest to CONAGRA FOODS, INC.**  
Serve: Prentice- Hall Corporation System, Inc.  
50 West Broad Street, Suite 1330  
Columbus, OH 43215

      **Defendants**.

Plaintiff CARRIE JONES ("Plaintiff") for her claims against the Defendants and states as follows, that at all relevant times:

## INTRODUCTION

1. Plaintiff brings this action to recover monetary damages for injuries she sustained as a result of a fire that occurred on or about August 24th, 2017 at 3486 Alamosa Drive, Cincinnati, Hamilton County, Ohio 45251 ("the Alamosa property").

2. The fire was caused by a PAM cooking spray canister ("PAM product") designed, formulated, produced, created, made, constructed, assembled, labeled, manufactured, filled and/or sold by Defendants, ConAgra Foods Incorporated and/or Conagra Brands, Inc. ("Defendants").

3. While Plaintiff was cooking on a gas stove in the Alamosa property, a can of PAM cooking spray that was located on a ledge above the cooking surface abruptly vented and released its contents onto the open flame of one of the burners. The PAM product contents contained isobutane and propane and came in contact with the open gas flames causing a fire and serious injuries to Plaintiff.

4. The Plaintiff contends that the Defendants are liable to her pursuant to the Ohio Product Liability Act (O.R.C. Section 2307.71 et. seq.) for the defective condition of the PAM cooking spray.

## THE PARTIES

5. Plaintiff was at all relevant times and is currently a resident and citizen of the State of Ohio currently residing at 5720 McGregor Ave #3R, Cincinnati, Ohio 45216.

6. Defendant CONAGRA FOODS, INC. was a Delaware Corporation operating and doing business in the State of Ohio. It is currently a registered trade name for Defendant CONAGRA BRANDS, INC. Service of Process is proper on CONAGRA BRANDS, INC. at 222 West Merchandise Mart Plaza, Suite 1300, Chicago, IL 60654.

7. Defendant CONAGRA BRANDS, INC. is a foreign Delaware Corporation operating and doing business in the State of Ohio. It was formerly known as CONAGRA FOODS, INC. and is the successor in interest to CONAGRA FOODS, INC. Service of Process is proper on Prentice Hall Corporation System, Inc. at 50 West Broad Street, Suite 1330, Columbus, Ohio

43215. Its principal place of business is located at 222 West Merchandise Mart Plaza, Chicago, IL 60654.

8. Defendants CONAGRA FOODS, INC. and CONAGRA BRANDS, INC will be collectively referred to as "Defendants."

## JURISDICTION & VENUE

9. This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) and 1367. Plaintiff and defendants are citizens of different states and the amount in controversy on each claim exceeds $75,000.00, exclusive of interests and costs.

10. This court has personal jurisdiction over Defendants as each Defendant directly or by an agent (a) transacted business in Ohio; and/or (b) contracted to supply services or goods in Ohio; and/or (c) caused tortious injury by acts and omissions in this state; and/or (d) caused tortious injury by acts and omissions outside this state but regularly conduct and/or solicits business or engage in other persistent conduct or otherwise derives substantial revenue from the goods or services rendered in this state; (e) caused injury in Ohio by breach of express or implied warranties made in the sale of goods outside Ohio when Defendants might have reasonably expected a consumer such as Plaintiff to use or be affected by the products in Ohio; and (f) otherwise derive substantial revenue from the goods or services used, consumer or rendered in Ohio.

11. Furthermore, with respect to each Defendant, personal jurisdiction meets the bounds of all constitutional analysis because Defendants' PAM product was sold in Ohio and injured Plaintiff in Ohio such that minimal contacts exist and the cause of action is directly connected to those contacts.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that the event at issue occurred in this district, and Defendants transact business in the State of Ohio.

**GENERAL ALLEGATIONS**

13.Plaintiff is a thirty-two year old woman who over the course of her lifetime spent considerable time in personal and professional kitchens and is an experienced cook.

14.On or about August 24, 2017, Plaintiff was cooking in the kitchen of the residence located on the Alamosa Property.  She had recently moved into the residence and was subletting the residence and living with the primary tenant Sheri Lucas.

15.Ms. Lucas had recently purchased two cans of PAM cooking spray with the specific purpose of using the cooking spray in the kitchen, which had a gas stove.

16.Prior to the fire incident, Plaintiff did not purchase, was not using, and did not see the PAM product at issue.

17.Ms. Lucas placed both PAM cans in the kitchen, placing one of the PAM cans on a shelf behind the stove.  Plaintiff did not see Ms. Lucas place the PAM can on the shelf and was unaware that the PAM can product was on the shelf.

18.Neither Plaintiff nor Ms. Lucas were ever aware that the PAM product contained highly flammable ingredients such as isobutane and propane that could cause a fire and severe burn injuries if the can was on or near a cooking surface.

19.Neither Plaintiff nor Ms. Lucas were ever aware that the PAM product also contained vents on the bottom of the can that could open when the can was on or near a stovetop.

20.Neither Plaintiff nor Ms. Lucas were ever aware that the release the isobutane and propane within the PAM product that could come in contact with the cooking surface and cause a fire and severe burn injuries.

21. While Plaintiff was cooking, without any warning, the canister of PAM over-pressurized and vented, spraying its flammable contents onto the stove thereby igniting a fire at the residence that came in contact with the Plaintiff.

22. As a result of the fire, Plaintiff suffered the following injuries, some or all of which may be permanent in nature:

   a. Severe burns to her face, chest, and arms;
   b. Substantial physical deformity and scarring;
   c. Physical pain and suffering;
   d. Emotional distress.

23. Defendants are one of America's largest food companies.

24. At all times relevant to the allegations in this complaint, Defendants were and are in the business of manufacturing, advertising and promoting the sale of various food brands, including the PAM product.

25. Defendants are "manufacturers" within the meaning of the Ohio Product Liability Act because Defendants were engaged in the business of designing, formulating, producing, creating, and making the PAM product.

26. Defendants are also "suppliers" within the meaning of the Ohio Product Liability Act because Defendants, in the course of business, sold, distributed, prepared, blended, packaged, labelled, and/or otherwise participated in placing the PAM product in the stream of commerce.

27. Defendants designed, manufactured, supplied, filled and/or sold the PAM product for use by consumers in residential kitchens, and the Defendants expected that the PAM product would be used nationwide, including Ohio, in residential kitchens around stoves including the type of gas stove that Plaintiff was using.

28. At the time the Defendants designed, manufactured and/or sold the PAM product, the Defendants expected the PAM product to reach its ultimate user without substantial change in the condition in which it was designed, manufactured and/or sold for use in the State of Ohio.

29. Defendants designed, manufactured, formulated, supplied, and sold the PAM product specifically for use in the kitchen and for use around gas stoves.

30. The PAM product reached its ultimate purchasers and users without substantial change in its condition and was stored in the kitchen in a reasonably foreseeable manner.

31. The PAM product involved in this fire, as designed, manufactured, supplied, and/or sold by the defendant was defective in that through ordinary and foreseeable use it could over-pressurize and vent flammable contents thereby creating a risk of fire and burn injuries to anyone in close proximity to the PAM product.

32. At the time Defendants designed, manufactured, supplied, and/or sold the PAM product, Defendants knew of the risk of over-pressurizing and venting of the flammable product, and failed to advise purchasers and users of the dangerous condition of the product.

33. At the time Defendants designed, manufactured, supplied, and/or sold the PAM product, Defendants failed to accurately label and warn purchasers and users that the PAM product contains ingredients such as liquefied petroleum gas, propane, butane and/or ethanol, but rather only listed "propellant" on the back under small-print ingredients.

34. At the time Defendants designed, manufactured, supplied, and/or sold the PAM product, Defendants failed to accurately label and warn users that the PAM product contains "extremely flammable aerosol" that should not be exposed to temperatures in the range of 120 degrees.

6

35. At the time Defendants designed, manufactured, supplied, and/or sold the PAM product, Defendants failed to accurately label and warn purchasers and users of the dangers and risks presented by the PAM product and instead elected to place almost invisible warnings in small, yellow-colored print on a yellow background.

36. Plaintiff's injuries were caused by the defective condition of the PAM cooking spray as designed, manufactured, supplied, and/or sold by the Defendants.

37. Furthermore, the harm suffered by the Plaintiff was the result of the Defendants' disregard for the safety of consumers using its PAM product, in that the Defendants knew or reasonably should have known that the cooking spray created a fire hazard, and despite such knowledge, the Defendants sold the PAM product for use in public kitchens and around stoves such as where Plaintiff was injured.

## CAUSES OF ACTION

## COUNT I

### STRICT LIABILITY
### DEFECTIVE IN MANUFACTURE OR CONSTRUCTION
### (Ohio R.C. 2307.74)

38. Plaintiff incorporates the previous paragraphs of this Complaint as if fully restated here.

39. Defendants' PAM product was defective in manufacture because when it left the control of Defendants, it deviated in a material way from the Defendants' design specifications and/or Defendants' performance standards.

40. Specifically, the PAM was capable of venting at temperatures lower than Defendants' specification and/or performance standards allow.

41. As a direct and proximate result of the manufacturing defect, the PAM can over-pressurized and vented, spraying its flammable contents onto the stove thereby igniting a fire at the residence that came in contact with the Plaintiff.

42. As a direct and proximate result of defendant's defective product and fire, Plaintiff suffered the debilitating injuries, hospitalization, permanent scarring and disfigurement, lost wages, medical expenses, loss of enjoyment of life, substantial physical deformity, and past and future emotional and physical pain and suffering.

## COUNT II

### STRICT LIABILITY
### DEFECTIVE IN DESIGN
### (Ohio R.C. 2307.75)

43. Plaintiff incorporates the previous paragraphs of this Complaint as if fully restated here.

44. At all times herein set forth, Defendants were engaged in the business of designing, formulating, producing, creating, manufacturing, constructing, assembling and marketing the PAM product that was purchased for use in the kitchen located at the home where Plaintiff was injured.

45. Defendants are each strictly liable because the PAM product was designed in a defective manner and was in a defective and unreasonably dangerous condition when Defendants placed the PAM product into the stream of commerce.

46. The defective condition of the PAM product existed at the time the products were sold into the stream of commerce. The defective condition of the PAM product also existed at the time the Pam product was purchased and placed in the kitchen at the Alamosa Propertyd. The defective condition also existed at the time the PAM product vented and injured Plaintiff.

47. Plaintiff and the purchaser of the PAM product were both unaware of the hazards of venting, specifically the risk of causing a fire with regular use and storage.

48. Defendants' PAM product contained foreseeable risks that outweighed the benefits associated with the design:

> a. The nature and magnitude of the risk of the can venting and causing a fire was high in light of the intended and reasonably foreseeable uses of the products in and around heat sources in the kitchen, including gas stoves;
>
> b. The likelihood that product users were aware of this risk was low, given that the product was designed and advertised to be used around gas stoves, and had no adequate warnings about possible dangers of doing so;
>
> c. The likelihood of the PAM product causing and/or contributing to a fire due to venting was high in light of the intended and reasonably foreseeable use of the PAM product around gas stoves and other heating sources;
>
> d. The flammability of the PAM product's ingredients and the PAM product's risk of venting were more dangerous than a reasonably prudent consumer would expect when used in the intended and reasonably foreseeable manner of cooking;
>
> e. At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternative designs were available with respect to the flammability of the ingredients, and alternative can designs would have prevented the venting event and the injuries in this case without substantially impairing the usefulness of the intended purposes of the product.
>
> f. Was otherwise defective.

49. The PAM product's defects were a direct cause and/or substantial contributing factor in causing Plaintiff to suffer the burn injuries described herein.

50. Had a reasonable alternative can design been implemented to minimize the risk of or prevent venting, Plaintiff would not have suffered the catastrophic injuries described herein.

51. As a direct and proximate result of Defendants' defective PAM product, Plaintiff has sustained permanent injury that include past and future emotional and physical pain and

9

suffering, substantial physical deformity, loss of enjoyment of life, and past and future medical expenses.

## COUNT III

### STRICT LIABILITY
### INADEQUATE WARNING OR INSTRUCTION
### (Ohio R.C. 2307.76)

52. Plaintiff incorporates the previous paragraphs of this Complaint as if fully restated here.

53. Defendants are each strictly liable because when the PAM product left the control of its manufacturer, the PAM product was defective due to inadequate warning and/or instructions for use at the time of marketing:

> a. Defendants knew, or in the exercise of reasonable care, should have known that the there was a significant risk of venting, fire, and burn injuries associated with the use of the PAM product;
>
> b. Defendants failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the product would use the product in the kitchen and in close proximity to gas stoves.
>
> c. Defendants failed to provide adequate warnings that a manufacturer exercising reasonable care would have provided concerning the risk of venting, risk of fire, and risk of burn injuries.
>
> d. Defendants failed to provide adequate warnings that a manufacturer exercising reasonable care would have provided concerning the types of propellants in the PAM product including isobutane and propane.

54. The Defendants are also each strictly liable for inadequate post-marketing warnings and instructions:

> a. After receiving post-marketing incident reports or testing data, each manufacturer knew, or in the exercise of reasonable care, should have known that the there was a significant risk of venting, fire, and burn injuries associated with the use and/or storage of the PAM product;

10

   b. Defendants failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the PAM product.

   c. Defendants failed to provide warnings that a manufacturer exercising reasonable care would have provided concerning the risk of venting, risk of fire, and risk of burn injuries due to venting.

   d. Defendants failed to provide warnings that a manufacturer exercising reasonable care would have provided concerning the risk of venting, risk of fire, and risk of burn injuries due to the types of propellants utilized including isobutane and propane.

55. The risk of the can venting and spraying the propellant onto an open flame when someone is using a gas stove is not an open and obvious risk or a risk that is a matter of common knowledge.

56. Defendants' failures to provide adequate warnings, both pre-market and post-market, was a direct cause and/or substantial contributing factor in proximately causing the PAM product to vent and Plaintiff to suffer the injuries described herein.

57. Had Defendants properly warned the purchaser of the product, the purchaser would not have purchased this type of PAM product.

58. Alternatively, had Defendants properly warned the purchaser of the product, the purchaser would not have placed the PAM product in the kitchen around the gas stove.

59. As a direct and proximate result of Defendants' inadequate warnings, the purchaser of the PAM product exposed Plaintiff to the PAM products without the proper understanding of the risk of can venting and burn injuries from ordinary use.

60. As a direct and proximate result of Defendants' PAM products due to inadequate warning and instruction, Plaintiff sustained permanent injury that include past and future

11

emotional and physical pain and suffering, substantial physical deformity, past and future medical expenses, and lost wages.

## COUNT IV

### STRICT LIABILITY
### NON-CONFORMING TO REPRESENTATIONS
### (Ohio R.C. 2307.77)

61. Plaintiff incorporates the previous paragraphs of this Complaint as if fully restated here.

62. Defendants are strictly liable because the PAM product does not conform to the representations made by the manufacturer with respect to the safety when used in a kitchen.

63. At the time the PAM product was placed into the stream of commerce, Defendants represented by specific statements and acts of omission that the PAM product was safe for use when cooking and when used in the kitchen.[1]

64. As a direct and proximate result of Defendants' misrepresentations, the purchaser of the PAM product reasonably relied on such representations and stored the PAM product in the kitchen on a shelf behind the gas stove.

65. As a direct and proximate result of Defendant's misrepresentations, the PAM product's purchaser was unaware of the dangers of the PAM products as described above and never warned Plaintiff of the location of the PAM product or its dangers.

66. Had Defendants not misrepresented the safety and purpose of the PAM products as cooking products for use in the kitchen, the purchaser would not have purchased this type of PAM product.

---

[1] See, *e.g.*, https://www.ispot.tv/ad/wof_/pam-cooking-spray-no-butter-featuring-the-swedish-chef; https://www.ispot.tv/ad/woBm/pam-cooking-spray-swedish-chef-croquembouche.

67. Alternatively, had Defendants not misrepresented the safety and purpose of the PAM product as cooking products that are safe for use in the kitchen, the purchaser would not have placed the PAM products on a shelf behind the gas stove.

68. As a direct and proximate result of Defendants' misrepresentations, Plaintiff sustained permanent injury including past and future emotional, loss of enjoyment of life, past and future physical pain and suffering, substantial physical deformity, past and future medical expenses, and lost wages.

## COUNT V

### NEGLIGENCE – SUPPLIER LIABILITY
### (Ohio R.C. 2307.78)

69. Plaintiffs incorporate the previous paragraphs of this Complaint as if fully restated here.

70. Defendants were each suppliers in the course of business conducted for the purposes of selling, distributing, preparing, blending, packaging, labeling, or otherwise participated in placing the product in the stream of commerce.

71. Each Defendant owed a duty of reasonable care to Plaintiff.

72. Each Defendant breached that duty of care by:

   a. Failing to provide adequate warnings to persons cooking with and around their PAM products;

   b. Failing to provide adequate instructions concerning safe and/or safer methods of cooking with and around PAM products;

   c. Failing to conduct adequate testing on their PAM products to determine the venting hazards to which consumers and individuals such as Plaintiff may be exposed to while working with and around their products;

   d. Failing to monitor and analyze what post-marketing reports observed with regard to individuals working with and around Defendants' PAM products and/or substantially similar products;

  e. Were otherwise negligent in the sale and marketing of the PAM products.

73. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of each of the defendants named in this Count, Plaintiff was exposed to a dangerous and defective PAM product that vented and caused a fire resulting in catastrophic burn injuries.

74. As a direct and proximate result of negligence, Plaintiff suffered permanent injury, including past and future emotional and physical pain and suffering, substantial physical deformity. She also incurred past and future medical expenses and lost wages.

## COUNT VI

## PUNITIVE DAMAGES

75. Plaintiff incorporates the previous paragraphs of this Complaint as if fully restated here.

76. The Defendants had a duty to refrain from willful and wanton acts, omissions and/or misconduct which would foreseeably expose Plaintiff to an unreasonable risk of harm and cause injury.

77. Defendants breached their duties and committed one or more of the following acts or omissions amounting to willful and wanton misconduct, in that they intentionally or with reckless disregard for the health, safety and well-being of the Plaintiff and others similarly situated:

 (a) Had actual knowledge of the hazards of the PAM product and chose to act in a way that injured Plaintiff all for material gain.

 (b) Designed, manufactured, sold, distributed, marketed, and/or otherwise used materials and designed products which contained an increased risk of causing a fire and harm to its users or others around the product despite what was known at the time;

 (c) Engaged in the aforesaid activities when adequate substitutes were available;

 (d) Otherwise failed to provide any or adequate warnings or hazard communications to

        consumers and persons purchasing the PAM product;

(e)    Failed to disclose and/or covered up and/or hid known information concerning the risk of fires and burn injuries with the ordinary use of the PAM product.

78.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions on the part of the Defendants, Plaintiff was exposed to the defective PAM product and resulting fire and thereby sustained damages as outlined above.

79.    An award of punitive damages is necessary and appropriate to punish Defendants for their willful, wanton and/or intentional misconduct and/or reckless disregard for the health, safety and well-being of Plaintiff and others and to deter said Defendants and others similarly situated from engaging in like misconduct in the future.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against these Defendants, jointly and severally, to award compensatory and punitive damages in excess of $75,000.00 and to grant such other and further relief as this Court deems appropriate.

        Respectfully Submitted,

        **THE LYON FIRM**

        */s/ Joseph M. Lyon*
        Joseph M. Lyon OH #0076050
        2021 Auburn Ave.
        Cincinnati, Ohio 45219
        Phone: (513) 381-2333
        Fax:   (513) 766-9011
        jlyon@thelyonfirm.com

TO BE ADMITTED PRO HAC VICE

        __/s/ ct26662_____
        J. Craig Smith
        Koskoff Koskoff & Bieder, P.C.
        350 Fairfield Avenue
        Bridgeport, CT 06604
        Phone: (203) 336-4421
        Fax: (203) 368-3244
        csmith@koskoff.com


        __/s/ ct29766_____
        Emily B. Rock
        Koskoff Koskoff & Bieder, P.C.
        350 Fairfield Avenue
        Bridgeport, CT 06604
        Phone: (203) 336-4421
        Fax: (203) 368-3244
        erock@koskoff.com


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.

        /*s/ Joseph M. Lyon*
        Joseph M. Lyon OH#0076050