IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JAMES A. SINGLER, as Guardianship of Carrie Jones, | : | Case No. 1:18-cv-271 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CONAGRA FOODS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL (DOC. 46)**

This case is before the Court on the Motion to Compel (Doc. 46) filed by Plaintiff James A. Singler, as Guardianship of Carrie Jones, which is fully briefed and ripe for review. (*See* Docs. 47-49.) For the reasons below, the Court **GRANTS** the Motion.

**FACTS**

Plaintiff brings this action to recover monetary and punitive damages for injuries Ms. Jones sustained as a result of a fire on August 24, 2017 at her residence in Cincinnati, Ohio. (Doc. 24 at PageID # 137.) Plaintiff alleges the fire was caused by a PAM product canister designed, manufactured, filled, packaged and sold by Defendants ConAgra Foods, Inc., Conagra Brands, Inc. F/K/A and successor in interest to ConAgra Foods, Inc. (together, "Conagra"), and DSC Containers, Inc.

As Ms. Jones was cooking on a gas stove, a can of PAM that was sitting on a ledge above the cooking surface abruptly vented and released its contents onto the open

flame of one of the burners. The PAM container's contents, which included isobutane and propane, combusted upon contact with the open flames causing the fire that injured Plaintiff. (*Id.*)

Plaintiff asserts five claims against Conagra and DS Containers: (1) design defect under Ohio R.C. 2307.75, (2) manufacturing or construction defect under Ohio R.C. 2307.74, (3) inadequate warning or instruction under Ohio R.C. 2307.76, (4) non-conforming to representations under Ohio R.C. 2307.77, and (5) supplier negligence under Ohio R.C. 2307.78.

On April 21, 2020, Plaintiff served DSC Containers with interrogatories and documents requests. DSC Containers objected to the requested discovery as overly broad, among other reasons. After Plaintiff's good faith attempts to resolve the parties' disputes failed, he brought the instant motion to compel.

## LAW

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). Federal Rule of Civil Procedure 26(b) identifies the acceptable scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

2

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."), 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)[.]"). In short, "a plaintiff should have access to information necessary to establish her claim, but … a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)); *see also Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015).

"[T]he movant bears the initial burden of showing that the information is sought is relevant." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

Finally, a party moving for an order compelling discovery must "include a

3

certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a); *see also* S.D. Ohio Civ. R. 37.1 ("[M]otions ... relating to discovery shall not be filed in this Court ... unless the parties have first exhausted among themselves all extrajudicial means for resolving the differences."). Here, Plaintiff's certification is attached as an exhibit to his motion, and there is no dispute that the parties have conferred in good faith. (Doc. 46-2.)

## ANALYSIS

Plaintiff moves to compel further responses to interrogatories and document requests. The Court addresses each set of requests at issue in turn below.

### A. Plaintiff's Interrogatories

Plaintiff's interrogatories to DS Containers requested "information pertaining to to the design, specifications, performance, testing, quality assurance/quality control, and communications related to its DOT-2Q bottom-vented aerosol can" from the time period of January 1, 2011 to the present. (Doc. 47 at p. 4; Doc. 46-3.) In response, DS Containers objected to providing information for any time period except the single date of April 29, 2016, which is when DS Containers claims to have manufactured the DOT-2Q bottom-vented can that injured Plaintiff. (*See, e.g.*, Doc. 46-3 at "General Objections" ¶ 9.) It also objected to the interrogatories as disproportional, overbroad and vague, seeking information that is neither relevant nor reasonably calculated to lead to admissible evidence, and not being limited to the subject product manufactured by plaintiff in this litigation. (*See id.* at p. 2-9.)

4

B.  **Plaintiff's Requests for Production**

Like his interrogatories, Plaintiff's requests for production seek documents relating to "the design, specifications, performance, testing, quality assurance/quality control, and communications related to its DOT-2Q bottom-vented aerosol can." (Doc. 47 at p. 5.) In addition, Plaintiff requested documents regarding the price, cost projections, and analysis related to the DOT-2Q bottom-vented cans and related to DS Containers' DOT-2Q non-vented cannister. As discussed below, the non-vented cannister is an alternative design that may also be used for the PAM product.

DS Containers stated that, in response, it would produce relevant testing only for the particular can that injured Ms. Jones and the lot that it came from. (Doc. 46-4 at PageID # 417.) It also objected on grounds that the requests were disproportional, overbroad and vague, seeking information neither relevant nor reasonably calculated to lead to admissible evidence, and overly broad as to time period. DS Containers produced documents from only the period during which it believes that Plaintiff's can was manufactured. It did not produce any test document, manufacturing record, or any record specific to Plaintiff's DOT-2Q bottom-vented can or its date of manufacture.

C.  **Relevance of the Requested Information and Documents**

The PAM product that allegedly caused Plaintiff's injuries was contained in a "DOT-2Q bottom-vented can" designed and manufactured by DS Containers. DS Containers also designed a non-vented version of the can, which Plaintiff asserts could withstand 50% higher pressure. The difference between the cans is that the bottom-vented can is scored with four u-shaped lines which are inscribed into the steel to

5

weaken the can bottom. (Doc. 47 at PageID# 463.)

Plaintiff's discovery requests cover both types of cans. Accordingly, Plaintiff must establish the relevance of his discovery regarding each type of can in support of his motion to compel.

### 1. The DOT-2Q Bottom-Vented Cans

DS Containers objects only to the scope of discovery regarding the bottom-vented cans. Specifically, it argues that Plaintiff should be permitted discovery into only the manufacturing lot that included the can at issue. In response, Plaintiff notes that he has brought claims for both a manufacturing defect and design defect. In order to support the design defect claim, he requires development, design, testing, and manufacturing records dating back to January 1, 2011.

Plaintiff alleges that Defendants switched from a three-piece can to the two-piece DOT-2Q can in the late 2000's. The particular bottom-vented can at issue in this case was manufactured on April 29, 2016. Plaintiff therefore requests information dating back to approximately five years before its manufacture.

Plaintiff contends this historical information is relevant to his defective design claim under Ohio Rev. Code 2307.75. To prevail on that claim, Plaintiff must show that "at the time [the product] left control of its manufacturer, the foreseeable risks associated with its design or formulation ... exceeded the benefits associated with that design or formulation." Ohio Rev. Code § 2307.75(A). The statute then sets out a non-exhaustive list of risk factors, *id.*, § 2307.75(B), and benefit factors, *id.*, § 2307.75(C), to be weighed in making the determination as to such a claim. Plaintiff cites cases in which

courts have allowed similar discovery on a defective design claim, sometimes dating back many years before the particular product at issue was manufactured. *See Reising v. Toro Company*, 2018 WL 5489568 at 5 (S.D. Ohio 2018) (ordering that plaintiff could obtain discovery of materials relating to lawnmower at issue and sixty-seven substantially similar models going back fifteen years); *State Farm Fire & Cas. Co. v. Black & Decker, Inc.*, 2003 WL 103016 at 6 (E.D. La. 2003) (ordering disclosure of all design, engineering, and manufacturing documents relating to an allegedly defective toaster): *O'Connor v. AM Gen. Corp.*, 1992 WL 382366 at 3-4 (E.D. Pa.) (allowing discovery of records regarding designs, tests, and standards, including design and development records, for defective transmission).

DS Containers does not dispute the relevancy of development, design, testing, and manufacturing records. Rather, it argues that such evidence cannot overcome the fact that the particular manufacturing lots at issue satisfied Department of Transportation (DOT) requirements and Conagra's specifications for the cans. It further contends that the evidence will establish that Ms. Jones misused the PAM product in disregard for its warning label and, therefore, Plaintiff will be unable to prove causation for any alleged manufacturing or design defect. In other words, according to DS Containers, Plaintiff's design defect claim will ultimately fail on the merits, regardless of the discovery that she now seeks.

The problem with DS Containers' argument is that the case is not in a procedural posture for the Court to adjudicate the merits of any of Plaintiff's claims or DS Containers' defenses. DS Containers acknowledges that the deadline for providing an

7

expert report opining to any defect in the can has not expired, so it would be premature to move for summary judgment on that claim. (Doc. 48 at PageID# 490.) How, then, could the Court rule that Plaintiff is not entitled to relevant discovery because DS Containers has a complete defense to his claims? The obvious answer is that the Court must permit the discovery so long as Plaintiff has carried his burden under the federal rules. And, in this case, Plaintiff has done so.

DS Containers argues that Plaintiff misrepresented *Riesing v. Toro Company*, 2018 WL 5489568 (S.D. Ohio 2018) because, in that case, the court did not permit unrestricted discovery regarding the defendant's lawnmowers. Putting aside whether Plaintiff misrepresented the case, *Riesing* supports Plaintiff's position. The *Riesing* court permitted discovery regarding the model at issue and 67 substantially similar models. In this case, Plaintiff seeks discovery regarding the precise model can that exploded and only one substantially similar model. Discovery regarding the two models could show the comparative strengths and weaknesses of the two designs, which is relevant to whether the strengths of the bottom-vented can were outweighed by its weaknesses on the date of its manufacture.

The *Riesing* court also permitted discovery regarding design and development materials from one year before the defendant began manufacturing the allegedly defective lawnmower model to the date of the plaintiff's injury—providing fifteen years' worth of information on dozens of models of residential lawnmowers. In contrast, Plaintiff here seeks information for two models dating back less than ten years.

The second case that DS Containers brings to the Court's attention is *Jack v. Allied Systems, Ltd.*, 2009 WL 10679473 (S.D. Ohio 2009). In *Jack*, the plaintiffs alleged that a truck driver was seriously injured when, during the scope of his employment, he was attempting to use a tie-down chain to secure a motor vehicle for transportation to a car dealership. Plaintiffs alleged claims for strict liability and negligence, among others, against the chain's manufacturer. Upon plaintiffs' motion to compel, the court ruled that plaintiffs' requests for manufacturing and testing documents for the chain sought relevant information. The manufacturer had objected on relevance grounds because plaintiffs did not have the actual chain that failed and therefore—as their own expert conceded—they could not prove a manufacturing defect claim.

The court observed, however, that plaintiffs brought claims based on both manufacturing and design defects. It hypothesized that, if the testing records show that a high percentage of the chains broke under stress, then the manufacturer's knowledge of that fact could support Plaintiff's claims based on either a manufacturing defect or a defective design—depending on what the documentation showed.

DS Containers contends the *Jack* court granted the plaintiffs' motion to compel only due to the unavailability of the actual tie-down chain that failed. As discussed above, this reading oversimplifies the court's analysis. Certainly, the unavailability of the chain was a factor in its decision, but the discovery was also relevant to plaintiffs' separate design defect claim. To prove a design defect, the plaintiffs did not need to produce the actual chain that failed. Here, Plaintiffs cite *Jack* principally in support of their argument that the requested records could show that the design of the bottom-

9

vented can was defective.

In sum, Plaintiffs have sustained their burden of showing the relevance of their requested discovery regarding the DOT-2Q bottom-vented can.

### 2. DOT-2Q Non-Vented Cans

Plaintiff's requested discovery regarding the non-vented cans is also relevant to his product liability claims. Under Ohio product liability law, a plaintiff must demonstrate that "an alternative design would have prevented the harm for which the claimant seeks to recover." *Rheinfrank v Abbot Laboratories, Inc.*, 137 F. Supp.3d 1035, 1039 (S.D. Ohio 2015). Plaintiff's theory is that the non-vented can is such an alternative design.

DS Containers concedes that the non-vented can is an alternative design with different specifications than the vented can. A vented can, for example, is designed to vent at a pressure no lower than 180 psig, whereas a non-vented can is designed not to vent, but to burst at a pressure no lower than 270 psig. DS Containers argues its admission of the feasibility of the alternative design renders the discovery unnecessary. This admission alone, however, might not be sufficient for Plaintiff to meet her legal burden. The trier of fact must determine what happened on the day that Ms. Jones suffered her injuries. Once that determination is made, only then can the trier of fact turn to the question of whether the non-vented can would have prevented her injuries. The Court cannot step into the jury's role and make those determinations.

Perhaps aware of this issue, DS Containers asserts that all of the evidence in this case establishes that Ms. Jones was not using the PAM product in compliance with its

labeling. That misuse is responsible for her injuries, not any design flaw. Again, while this may be an effective defense at trial, it is not a finding that can be made when ruling on a discovery dispute.

Plaintiff has shown the relevance of his discovery regarding the non-vented can.

### D. Proportionality of Discovery and Weighing Benefit against Burden

As Plaintiff has established relevance, DS Containers has the burden of showing that producing the discovery would be disproportionate to the needs of the case, or unduly burdensome or expensive to produce. DS Containers did not attempt to make any of these showings. Consequently, Plaintiff's motion will be granted as to all interrogatories and document requests in dispute.

### CONCLUSION

For the reasons above, the Court hereby **GRANTS** Plaintiff's Motion to Compel in its entirety. DS Containers shall provide further responses to Plaintiff's interrogatories and responses to his requests for production within 21 days of this Order.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND